Tameka Renee Crosland
4238 3rd Ave
Los Angeles, California 90008
Tel: 213 660-5993

In Pro Per

Fee Paid

**United States District Court**

**Central District of California**

| | |
|---|---|
| Tameka Renee Crosland, a citizen of California, Los Angeles individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>V.<br><br>Michael C. Earle, individually and in his personal capacity; Mary E Cooper, individually and in her personal capacity; George S Bird Jr., individually and in his personal capacity; Sybil Hall, individually and in her personal capacity; Teresa Turner, individually and in her personal capacity; Tatiana Lopez, individually and in her personal capacity; FastEvict.com/Law Group, a criminal enterprise and Does 1-30, inclusive<br><br>Defendants. | Case No:  2:24cv6277-AB-PvCx<br><br>**CLASS ACTION**<br><br>FILED<br>CLERK, U.S. DISTRICT COURT<br><br>JUL 2 5 2024<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY   ASLI   DEPUTY<br><br>**TRIAL BY JURY DEMANDED** |

On behalf of herself and the putative class of the people for California, Plaintiff TAMEKA RENEE CROSLAND brings this complaint against the defendants for their violations of the United States Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. Sections 1961, 1962 (c) & (d) and 1964 (a) and (c), and fraud, restitution, unjust enrichment.

1

## INTRODUCTION

1. This action arises out of FastEvict.com/Law Group, improper conduct in a scheme to steal real property in "trust" by filing sham lawsuits *only* with the Superior Court of California (Santa Monica Courthouse Department S). FastEvict.com/Law Group continues to wrongfully file sham lawsuits to this day and the foreseeable future.

2. Defendants, through FastEvict.com/Law Group's agents, then improperly evict California home owners/tenants utilizing schemes of artifice to defraud.

3. This class action further seeks to recover the real property and monies and kickbacks stolen from Californians by FastEvict.com/Law Group and Defendants, through FastEvict.com/Law Group's agents through fraudulent means and in violation of RICO. This class action further seeks to recover such monies under the theories of unjust enrichment and restitution.

4. Pursuant to RICO, 18 U.S.C. section 1961, 1962 (c) and (d) and 1964 (c), Plaintiff on behalf of herself and the putative class of the people for California, seek treble damages sustained as a result of Defendants' schemes and artifices to defraud, acts of mail fraud (18 U.S.C. 1341), wire fraud (18 U.S.C. 1343), interstate transportation of stolen property (pursuant to 18 U.S.C. 2314), and extortion (18 U.S.C. 1951). Plaintiff on behalf of herself and the putative class of the people for California seek disgorgement of Defendants' profits under 18 U.S.C. 1964(a) as the wrongful conduct continues since the filing of this complaint.

5. Under the agency and *respondeat* superior, each named Defendant, known and unknown, is jointly and severally liable for the improper acts of FastEvict.com/Law Group and the Defendant's that were complicit under the false pretenses of sham court filings and evictions.

## JURISDICTION & VENUE

6. This Court has nationwide jurisdiction over Defendants under RICO, 18 U.S.C. 1961, 1962(c) & (d) and 1964(c).

7. Venue in this district is proper because Plaintiff reside here, Defendants do business in this district, and Defendants have significant contacts with the district pursuant to 28 U.S.C. 1391.

2

8. Pursuant to 18 U.S.C. 1965(b), RICO contains an explicit grant or nationwide service over all Defendants.

9. This Court has jurisdiction over Defendants under theories of alter ego, agency and veil piercing.

10. This Court has jurisdiction over FastEvict.com/Law Group by virtue of FastEvict.com /Law Group eviction activities within California including direct contact to consumers and initiation of litigation within the state.

11. This Court has jurisdiction over FastEvict.com/Law Group and Defendants under the theory of *respondeat superior*.

12. This Court has jurisdiction over Defendant Michael C Earle under 28 USC 1332(a) because the total amount of controversy for this class action exceeds $75,000 exclusive of interest and cost. This Court has jurisdiction over Defendant Michael C Earle under 28 U.S.C. 1332(d) because the total amount in controversy for this class action exceeds $6,000,000 exclusive of interest and cost, and a defendant is a citizen of State different from Plaintiff and the class of putative people for California.

## PARTIES

### Plaintiff and putative class of people for California

13. The Plaintiff, Tameka Renee Crosland, is a natural person and Californian, Successor Trustee of the JAMES CROSLAND ESTATE and residing in Los Angeles County. Tameka has been the victim of FastEvict.com/Law and defendants illegal sham court activities concerning the Estate of JAMES CROSLAND. Tameka deceased father JAMES CROSLAND was sued by defendant Michael C. Earle.

14. The putative class of people for California have been the victim of FastEvict.com/Law Group and defendants complicit court activities.

### Defendants

15. Defendant FastEvict.com/Law Group is a corporation with its address located in San Bernardino, California and is wholly-owned by defendant Michael C Earle. FasrEvict.com/Law

3

Group is primarily a *crime syndicate* engaged in the business as a foreclosure mill with an agreement/contract only, with Santa Monica Court House Department S. The business address is 474 W. Orange Show Rd., San Bernardino, California 92408.

16. Defendant Michael C Earle is an individual and wholly-owner of FastEviction.com/Law Group with his address of Division del Norte 421-701, Ciudad de Mexico, CP 03100, MEXICO, doing business in California and headquartered in San Bernardino County.

17. Defendant Mary E Cooper is an individual with her address of 23823 Malibu Rd Ste 50-446, Malibu, CA 90265.

18. Defendant George S Bird Jr. is an individual with his address of 1725 Main St Dept. S, Santa Monica, California 90401.

18. Defendant Sybil Hall is an individual with her address of 1725 Main St, Santa Monica, California 90401.

20. Defendant Teresa Turner is an individual with her address of 1 E Regent St. Inglewood, CA 90301.

21. Defendant Tatiana Lopez, is an individual with her address of 1 E Regent St. Inglewood, CA 90301.

### Plaintiffs Interactions with Defendants
### <u>Tameka Renee Crosland</u>

22. Tameka Renee Crosland, father James Crosland became deceased in 2019. Tameka made all payments on the home located at 4238 3rd Avenue, Los Angeles, California.

23. On are around February 7, 2023 a probate case was opened for the Estate of JAMES CROSLAND, decedent.

Alex R Borden, appointed as Administrator of the JAMES CROSLAND ESTATE.

24. On January 16, 2024, a lawsuit was filed in Superior Court Los Angeles County (Santa Monica Courthouse Dept. S., by service of process on a decedent, JAMES CROSLAND, by Michael C Earle of FastEvict.com/Law Group against JAMES CROSLAND, decedent.

25. On or around January 19, 2024 a response was filed with Santa Monica Courthouse providing

evidence of an *open probate* and the name of the Administrator of the JAMES CROSLAND ESTATE.

### Mail & Wire Fraud

26. Defendants devised a scheme to defraud, obtain money and real property and unlawfully transfer the money and real property and/or securities by means of false or fraudulent pretenses and representations under the guise of "effecting dispossession or disablement of real property" and in concert with FastEvict.com/Law Group to implement the scheme. Defendants knowingly devised or knowingly participated in a scheme or artifice to defraud the Plaintiff and putative class of people for California or to obtain money or real property of Plaintiff and putative class of people for California by means of false or fraudulent pretenses, representations, or promises.

The scheme includes but not limited to:

a. Obtaining personal identifying information without consent;

b. Procuring and offering false or forged instruments to be filed, registered, or recorded in any public office within this state;

c. Sending collection letter to Plaintiff and putative class of people for California under the false pretense of a valid contract/agreement;

27. Defendant could foresee that the U.S. Postal Services and interstate wires would be "used for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. 1341 and 1343.

28. Defendants, acting singly and in concert, personally or through their agents, used the US Postal Service and interstate wires or caused the US Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud California homeowners/consumers within the meaning of 18 USC 1341 and 1343.

29. It is not possible for Plaintiff and putative class of people for California to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the scheme because the particulars of many such communications are within the exclusive control

and within the exclusive knowledge of Defendant and their agents.

30. By way of example, Defendants, through their agents (FastEvict.com/Law Group, members of the Law Group, specifically used the US Postal Service or Interstate wires or caused the US Postal Service or interstate wires to deliver and every telephone call, email, and letter attached and incorporated herein by reference (Exh "A"), for the purpose of advancing, furthering, executing, and concealing the scheme to defraud Plaintiff and putative class of people for California.

31. Interstate transportation of stolen property (securities) was an extension of the scheme to defraud as the wrongfully paid money from Plaintiff and putative class of people for California to Defendants was transported out of the state of California.

## Extortion

32. Defendants, through their agents (e.g. FastEvict.com/Law Group, members of the Law Group Enterprise, obstructed, delayed, or affected commerce and/or the movement of articles or commodities in commerce, by extortion or attempted or conspired to do so in violation of 18 U.S.C. 1951.

33. Defendants, through their agents (e.g. FastEvict.com/Law Group Enterprise, obtained money and securities and real property from Plaintiff and putative class of people for California, with their consent, induced by wrongful use of actual or threatened fear in the form of "sham" collection techniques which includes "sham filed lawsuits".

34. Particularly, Defendants, through their agents FastEvict.com/Law Group, files a lawsuit against Tameka Rene Crosland deceased father JAMES CROSLAND.

35. The CROSLAND lawsuit was particularly wrongful as Michael C Earle failed to serve the decedent JAMES CROSLAND, Administrator of to the JAMES CROSLAND ESTATE.

36. Defendants, through their agents, were aware that the were made aware and given notice that there was an open probate case filed in 2023, all defendants were given the name of the Administrator of the JAMES CROSLAND ESTATE as well as a copy of the death certificate.

6

37. The Defendants scheme plays upon the California consumer/homeowners fears of expensive litigation, seizures of real property and homelessness.

## **CLASS ACTION ALLEGATIONS**

38. The Rico putative class consist of (i) all Californians (ii) who paid money to Defendants (iii) under Defendant scheme to defraud (iv) using the mail and/or wires; (v) and/or interstate transportation of stolen property; (vi) and/or extortion (vii) during the forty-five period prior to the filing of the original complaint in this action through the trial of this cause.

39. The Restitution putative class consist of (i) all Californians (ii) who paid money to Defendants (iii) in regard to an alleged debt owed to Defendants (iv) during the forty-five period prior to the filing of the original complaint in this action through the trial of this cause.

40. Plaintiff and putative class of people for California allege that the class is so numerous that joinder of all members of the class is impractical as Defendants have filed thousands of cases and hold tens of thousands of consumer/homeowners' accounts in California.

41. There are questions of law or facts common to the classes, which common issues predominate over any issues involving only individual class members.

42. The common factual issue to the RICO putative class is whether FastEviction.com/Law Group committed a scheme of fraud using the mail, wireless, telephone, faxes, and internet and/or interstate transportation of stolen property and/or extortion.

43. The common factual issue common to Restitution putative class is whether FastEviction.com/Law Group received a monetary benefit from members. The principal legal issue for Restitution Class is whether FastEviction.com/Law Group engaged in collection without legal standing and whether it would be inequitable for FastEvict.com/Law Group to retain the benefits without paying fair value for it, in violation of common law.

44. Plaintiffs' claims are typical of those of the class members. All are based upon the same facts and legal theories. Plaintiff will fairly and adequately protect the interest of the classes.

45. Certification of the classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also

7

appropriate that:

(1) A class action is superior to other available methods for the fair and efficient adjudication

Controversy.

## **CLAIMS FOR RELIEF**

## **COUNT 1**

## **RACKETEER INFLUNCED AND CORRUPT ORGANIZATIONS ACT**
## **18 U.S.C. 1962(c)**
## **Defendants Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall,**
## **Teresa Turner, Tatiana Lopez and FastEviction.com/Law Group**

46. Plaintiff Tameka Renee Crosland on behalf of herself and the putative class of people for

California reallege and restate paragraphs 1 through 45.

47. All Defendants mentioned above are hereinafter referred to as the "RICO Defendants."

48. The following legal entities (or any combination thereof) constitute an "enterprise," within

the meaning of 18 U.S.C. 1961 (4) & 1962(c), in that they are "a group of individuals associated

in fact": Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner, Tatiana

Lopez and FastEviction.com/Law Group (FastEviction.com/Law Group Enterprise").

a. Michael C Earle is a "person," within the meaning of 18 U.S.C. 1961(3) & 1962 (c), who

individually associated with and/or participated in the conduct of the FastEvict.com/Law Group

Enterprise's affairs.

b. Mary E Cooper, George S Bird Jr, Sybil Hall, Teresa Turner, and Tatiana Lopez share the

common purpose of defrauding members of the plaintiff class of money or real property.

c. Mary E Cooper, George S Bird Jr, Sybil Hall, Teresa Turner, and Tatiana Lopez are related in

that they all are involved in the operation and management of conversion on behalf of

FastEvict.com/Law Group.

8

d. The FastEvict.com/Law Group Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the FastEvict.com/Law Group Enterprise has existed since 1979 and continues to operate to the present (at minimum).

e. Since 1979 and continuing to the present, Michael C Earle has conducted, participated in, engaged in, and operated and managed the affairs of FastEvict.com/Law Group, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner and Tatiana Lopez through a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(1), 1961(5) & 1962(c). Michael C Earle's pattern of racketeering activity consist of acts of mail and wire fraud (described in paragraphs 26-31, *supra*), interstate transportation of stolen property interstate transportation of stolen property (as described in paragraphs 30-31, supra), and extortion (as described in paragraph 32-37, *supra)*.

49. In the alternative to paragraph 48, Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner, Tatiana Lopez and FastEvict.com/Law Group are each a legal entity that constitutes an "enterprise," within the meaning of 18 U.S.C. 1961(4) & 1962(c).

a. Mary E Cooper is a "person" within the meaning of 18 U.S.C. 1961(3) & 1962 (c), who individually associated with and/or participated in the conduct of Michael C Earle, George S Bird Jr., Sybil Hall, Teresa Turner and Tatiana Lopez, FastEvict.com/Law Group affairs.

b. Since 1979 and continuing to the present, Mary E Cooper has individually conducted, participated in, engaged in, and operated and managed the affairs of the FastEvict.com/Legal Group, Michael C Earle, George S Bird Jr., Sybil Hall, Teresa Turner and Tatiana Lopez through a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(1), 1961(5) & 1962(c). Mary E Cooper pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 26-31, *supra*), interstate transportation of stolen property interstate transportation of stolen property (as described in paragraphs 30-31, supra), and extortion (as described in paragraph 32-37, *supra)*.

9

50. In the alternative to paragraphs 48, Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner, Tatiana Lopez and FastEvict.com/Law Group are each a legal entity that constitutes an "enterprise," within the meaning of 18 U.S.C. 1961(4) & 1962(c).

a. George S Bird Jr., is a "person" within the meaning of 18 U.S.C. 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of FastEvict.com/Law Group affairs.

b. Since 1979, and continuing to the present, George S Bird Jr., has conducted, participated in, engaged in, and operated and managed the affairs of FastEvict.com/Law Group through a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(1), 1961(5) & 1962(c). FastEvict.com/Law Group's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 26-31, *supra*), interstate transportation of stolen property (as described in paragraphs 30-31, *supra*), and extortion (as described in paragraph 32-37, *supra*).

51. In the alternative to paragraphs 48-49, FastEvict.com/Law Group is a legal entity that constitutes an "enterprise," within the meaning of the 18 U.S.C. 1961(4) & 1962(c).

a. Sybil Hall is a "person", within the meaning of 18 USC 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of FastEvict.com/Law Group's affairs.

b. Since 1979 and continuing to the present, Sybil Hall has conducted, participated in, engaged in, and operated and managed the affairs of FastEvict.com/Law Group through a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(1), 1961(5) & 1962(c). FastEvict.com/Law Group's pattern of racketeering activity consist of the acts of mail and wire fraud (described in paragraphs 26-31, *supra*), interstate transportation of stolen property (as described in paragraphs 30-31, *supra*), and extortion (as described in paragraph 32-37, *supra*).

52. The following legal entities, Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall,

Teresa Turner, Tatiana Lopez and FastEvict.com/Law Group constitutes an "enterprise," within the meaning of 18 U.S.C. 1961(4) & 1962(c), in that they are "a group of individuals associated in facts": Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner, and Tatiana Lopez (FastEvict.com/Law Group Enterprise").

a.  Teresa Turner is a "person," within the meaning of 18 U.S.C. 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the FastEvict.com/Law Group Enterprise's affairs.

b. Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, and Tatiana Lopez share the common purpose of (among other things) defrauding members of the plaintiff class of money or property.

c. Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, and Tatiana Lopez are related in that they are all involved in the operation and management of conversion on behalf of FastEvict.com/Law Group.

d. FastEvict.com/Law Group Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the FastEvict.com/Law Group Enterprise has existed since 1979 and continues to operate to the present (at a minimum).

e. Since 1979 and continuing to the present, Teresa Turner has conducted, participated in, engaged in, and operated and managed the affairs of Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, and Tatiana Lopez through a pattern of racketeering activity of within the meaning of 18 U.S.C. 1961(1), 1961(5) & 1962(c). Teresa Turner's pattern of racketeering activity consist of the acts of mail and wire fraud (described in paragraphs 26-31, *supra*), interstate transportation of stolen property (as described in paragraphs 30-31, *supra*), and extortion (as described in paragraph 32-37, *supra*).

53. In the alternative to paragraph 48, Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner, Tatiana Lopez, and FastEvict.com/Law Group are each a legal entity that

11

constitutes an "enterprise," within the meaning of 18 U.S.C. 1961(4) & 1962(c).

a. Tatiana Lopez is a "person," within the meaning of 18 U.S.C. 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner, and FastEvict.com/Law Group affairs.

b. Since 1979 and continuing to the present, Tatiana Does has individually conducted, participated in, engaged in, and operated and managed the affairs of the Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner, and FastEvict.com/Law Group through a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(1), 1961(5) & 1962(c). Tatiana Lopez, pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 26-31, *supra*), interstate transportation of stolen property (as described in paragraphs 30-31, *supra*), and extortion (as described in paragraph 32-37, *supra*).

54.    In the alternative to paragraphs 38-45, FastEvict.com/Law Group Enterprise is an "enterprise." within the meaning of 18 U.S.C. 1961(4) & 1962(c), in that its members are "a group of individuals associated in fact".

a. Each RICO Defendant is a "person," within the meaning of 18 U.S.C. 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the FastEvict.com/Law Group Enterprise's affairs.

b. The Members of the FastEviction.com/Law Group share the common purpose of (among other things) carrying out the RICO Defendants' scheme to defraud members of the plaintiff class money or real property.

c. The Members of FastEvict.com/Law Group are related in that they all employed by FastEvict.com/Law Group to take real property through litigation-related activities on behalf of Michael C Earle, Mary E Cooper, George S Bird Jr. and Sybil Hall.

d. FastEvict.com/Law Group Enterprise possesses sufficient longevity for the members to carry

out to their purpose(s) in that the FastEvict.com/Law Group Enterprise has existed since 1979 and continues to operate to the present (at a minimum).

e. Since 1979 and continuing to the present, each RICO Defendant has conducted, participated in, engaged in, and operated and managed the affairs of FastEvict.com/Law Group through a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(1), 1961(5) & 1962(c). Each RICO Defendant's pattern of racketeering activity consists of the facts of mail and wire fraud (described in paragraphs 18-23, *supra*), interstate transportation of stolen property (as described in paragraphs 30-31, *supra*), and extortion (as described in paragraph 26-31, *supra*).

55. At all relevant times, the enterprises alleged in paragraphs 30-31 *(supra)* were engaged in, and their activities affected, interstate commerce and foreign commerce.

56. All of the acts of racketeering described in paragraphs 46-67 *(supra)* were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. 1962(c), in that their common purpose was to defraud the plaintiff class members of money and real property, their common results was to defraud plaintiff and putative class members of money and real property; each RICO Defendant, personally or through his/its agents or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; consumers whose personal identifying information had been acquired by RICO Defendants were the victims of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

57. All of the acts of racketeering described in paragraph 38-47 *(supra)* were continuous so as to form a pattern of racketeering activity in that the RICO Defendants engaged in the predicate acts over substantial period of time or in that the RICO Defendants' acts of racketeering are the regular way in which the RICO Defendant have done and continue to do business and threatened to continue indefinitely.

58. As a direct and proximate result of, and by reason of, the activities of the RICO Defendants, and their conduct in violation of 18 U.S.C. 1962(c), Plaintiff and the putative class of people for California were injured in their business or real property, within the meaning of 18 U.S.C.

1964(c). Among other things, Plaintiff and the putative class of people for California suffered damages to the extent their money or real property was subject to sham litigation suits, liens, hiring of legal counsel to defend, and payments based upon fraudulent pretenses. Plaintiff and the putative class of people for California are, therefore, entitled to recover threefold the damages they sustained together with the cost of the suit, including costs, reasonable self-litigant's fees.

**WHEREFORE,** Plaintiff, on behalf of herself and the putative class of people for California, request that the Court enters judgment in favor of Plaintiff and the putative class people for California against Defendants for:

1. Treble damages;

2. Consequential damages; and

3. Putative damages;

4. Attorney's fees, litigation expenses, and costs of instant suit; and

5. All other relief as necessary in the premises.

## COUNT II
### RICO CONSPIRACY – 18 U.S.C. 1962(d)
### Defendants Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner, Tatiana Lopez and FastEviction.com/Law Group

59. Plaintiff, on behalf of herself and the putative class of people for California reallege and restate paragraph 1 through 58.

60. To the extent the RICO Defendants are liable as conspirators under 18 U.S.C. 1962(d), Count I is pled in the alternative to Count II.

61. As alleged in Count I, all of the RICO Defendants violated 18 USC 1962(c) by conducting or participating, directly or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity. These Defendant are hereinafter referred to as

14

"Operators and Managers."

62. To the extent some RICO Defendant are found to have not violated section 1962(c) as Operators and Managers, those RICO Defendant conspired with the Operators and Managers and thereby violated 18 U.S.C. 1962(d). These RICO Defendants are hereinafter referred to as Conspirators.

63. In particular, the Operators intended and agreed to further or facilitate an endeavor of the Operators and Mangers which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. 1962(c)) and adopted the goal of furthering or facilitating that criminal endeavor.

64. Plaintiff on behalf of herself and the putative class of people for California were injured by the Conspirators' overt acts that are acts of racketeering or otherwise unlawful under RICO statute, which included (among other acts) acts of mail and wire fraud (described in paragraphs 26-31, *supra*), interstate transportation of stolen property (as described in paragraphs 30-31, *supra*), and extortion (as described in paragraph 32-37, *supra*).

65. As a direct and proximate result of, and by reason of, the activities of the Conspirators, and their conduct in violation of 18 U.S.C. 1962(d), Plaintiff and the putative class of people for California, were injured in their business or real property, within the meaning of 18 U.S.C. 1964(c).

66. Among other things, Plaintiff and the putative class of people for California suffered damages to the extent their money or real property was subject to sham litigation suits, liens, hiring of legal counsel to defend, and payments based upon fraudulent pretenses. Plaintiff and the putative class of people for California are, therefore, entitled to recover threefold the damages they sustained together with the cost of the suit, including costs, reasonable self-litigant's fees.

67. The wrongful acts and false representations made by Defendant through their agents (e.g.

15

FastEvict.com/Law Group Enterprise) should be imputed to each and every Defendant under the theories of agency, alter ego, veil-piercing, and *respondeat superior*.

**WHEREFORE,** Plaintiff, on behalf of herself and the putative class of people for California, request that the Court enters judgment in favor of Plaintiff and the putative class people for California against Defendants for:

1. Treble damages;

2. Consequential damages; and

3. Putative damages;

4. Attorney's fees, litigation expenses, and costs of instant suit; and

5. All other relief as necessary in the premises.

## COUNT III

## RESTITUTION

## Defendants Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner, Tatiana Lopez and FastEviction.com/Law Group

68. Plaintiff, on behalf of herself and the putative class of people for California now re-allege each and every allegation as set forth above, and hereby incorporates same by reference as if all were set forth fully herein.

69. Plaintiff, on behalf of herself and the putative class of people for California claims have the same essential characteristics and arise from the same fraudulent conduct as a plaintiff who actually lost real property to Defendants.

70. Defendants have knowledge of the benefits/kickbacks received to each RICO defendant after the conversion of each homeowner's real property litigated by FastEvict.com/Law Group.

71. Defendants have accepted or retained the benefits conferred (i.e. the above-referenced

16

conversion of real property and monies).

72. The circumstances are such that it would be inequitable for Defendants to retain the benefit of millions of dollars and real property that they wrongfully embezzled from California Homeowners.

**WHEREFORE,** Plaintiff, on behalf of herself and the Restitution putative class for California, request that the Court enter judgment in favor of Plaintiff and the Restitution putative class people for California and against Defendants for:

    1. Actual damages, for the total dollar unlawfully collected by Defendants from the members Plaintiff of the Restitution putative class people for California over the past 45 years (plus, interest);

    2. An order instructing Defendants to disgorge their ill-gotten monies and real property from Plaintiff, the Restitution putative class for California;

    3. Litigation expenses and cost of this instant suit; and

    4. Such other and further relief as the Court deems proper.

## COUNT IV
### UNJUST ENRICHMENT
**Defendants Michael C Earle, Mary E Cooper, George S Bird Jr., Sybil Hall, Teresa Turner, Tatiana Lopez and FastEviction.com/Law Group**

73. Plaintiff, herself and on behalf of the putative class people for California now realleges each and every allegation as set forth above, and hereby incorporates same by references as if all were set forth fully herein. Substance prevails over form.

74. Plaintiff alleges that the Defendants have unjustly enriched themselves to Plaintiff's and the

putative class for California detriment, and that Defendants' retention of the of those benefits from the conversion of money and real property violates the principles of justice, equity, and integrity.

75. Plaintiff, on behalf of herself and the putative class of people for California have suffered a detriment – monies loss, real property taken, and defamation of character to the 3 credit bureaus. Plaintiff and the putative class of people for California claims have the same essential characteristics and arise from the same fraudulent conduct as a plaintiff who actually paid monies to Defendants.

76. Plaintiff, on behalf of herself and the putative class of people for California detriment has a connection between the detriment and the Defendants' retention of the benefits.

77. The Defendant's retention of Plaintiffs' monies and real property is a detriment to Plaintiff and the putative class of people for California.

78. Plaintiff, on behalf of herself and the putative class of people for California would have acted differently, had they known Defendants, through their agents (e.g. FastEvict.com/Law Group Enterprise) had no standing to file a lawsuit or engage in any other conversion of real property as a result of Defendants criminal enterprise.

79. The transfer of real property from Plaintiff and the putative class of people for California to Defendants, through their agents (e.g. FastEvict.com/Law Group Enterprise) in exchange for money, kickback and bribes, violated the fundamental principles of justice, equity, and integrity, so, the Defendants continued conversion of money and real property is a detriment.

80. The acts of Defendants complained of herein constitute unjust enrichment of Defendants at Plaintiff, and the putative class of people for California expense in violation of the of California Republic.

81. Plaintiff, on behalf of herself and the putative class of people for California are entitled to disgorgement of ill-gotten gains in an amount to be proved at trial.

**WHEREFORE,** Plaintiff, on behalf of herself and the putative class of people for California, request an Order from the Court requiring Defendants to disgorge all ill-gotten gains acquired

18

from their deceptive illegal conduct and all other recovery necessary in the premises.

Date:  July 24, 2024

Tameka Renee Crosland, Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

James Crosland (Deceased)

1  Tameka Renee Crosland, Successor Trustee
   4238 3rd Ave
2  Los Angeles, California 90008
   213 660-5993
3
4  Self represented

**FILED**
Superior Court of California
County of Los Angeles

**JAN 19 2024**

David W. Slayton, Executive Officer/Clerk of Court
By: T. Thompson, Deputy

5

6

**SUPERIOR COURT OF CALIFORNIA,**

**COUNTY OF LOS ANGELES**

7

8  GOLDEN COMBO HOLDING AND
   MANAGEMENT LLC

Case No: 24SMUD00114

9

10                           Plaintiff

11  v.

12

13  JAMES CROSLAND

14                           Defendant

DEFENDANT'S REQUEST FOR
REQUEST IN LIMINE TO EXCLUDE
ANY PROPERTY HELD IN LIVING
TRUST BECAUSE THIS IS A PROBATE
MATTER; JUDGMENT ON THE
PLEADINGS; OR IN THE
ALTERNATIVE, REQUEST FOR
NONSUIT.

15

16  TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD

17

18  Defendant Tameka Renee Crosland, Successor Trustee of James Crosland Living Trust, hereby

19  submits the following Request in Limine, Judgment on the Pleadings, or in the alternative, Request

20  for Nonsuit.

21  **INTRODUCTION**

22

23  The record is clear that Defendant James Crosland is deceased. Attached and incorporated herein

24  by reference (Exhibit "A").

25  **FACTS**

26  8/8/2019 Tameka Rence Crosland appointed successor trustee of Living Trust of JAMES

27                                    1

28

TERRY CROSLAND, III. Attached and incorporated herein by reference (Exhibit "B").

3/30/2023 Alex R. Borden appointed administrator of the decedent's estate. Attached and incorporated herein by reference (Exhibit "C").

**ARGUMENT**

The incapacity of James Crosland to be sued terminated on 8/11/2019. On May 8, 2023 Alex R Borden, Attorney and Administrator with full authority issued a letter to Quality Loan Service Corporation requesting a payoff quote about the potential sale of the property located at 4238 3rd Avenue, Los Angeles, California 90008. Attached and incorporated herein by reference (Exhibit "D").

A. Contrary to Plaintiff's position, Alex R. Borden, administrator of the decedent's estate made several requests to Quality Loan Service Corporation to pay off the property located at 4238 3rd Avenue, Los Angeles, California. Alex R. Borden was never provided with the requested information. Attached and incorporated herein by reference (Exhibit "E").

Furthermore, Alex R. Borden and Tameka Renee Crosland, Successor Trustee were not provided with a notice of sale from Quality Loan Service Corporation as required by Cal Com. Code Sec 9-504(3). Attached and incorporated herein by reference (Exhibit "F").

**CONCLUSION**

Based on the foregoing, the court should dismiss the complaint, and find favor of the Defendant.

DATED: January 19, 2024                    By: _____

Tameka Renee Crosland, Successor Trustee
Specially appearing
Without Attorney

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# Exhibit A

26
27
28

3

## STATE OF CALIFORNIA
### CERTIFICATION OF VITAL RECORD

# COUNTY OF LOS ANGELES
## DEPARTMENT OF PUBLIC HEALTH

3052019168339     **CERTIFICATE OF DEATH**     3201919037890

STATE FILE NUMBER      LOCAL REGISTRATION NUMBER

| Field | Value |
|---|---|
| 1. NAME OF DECEDENT—FIRST (Given) | JAMES |
| 2. MIDDLE | TERRY |
| 3. LAST (Family) | CROSLAND III |
| 4. DATE OF BIRTH | 07/06/1953 |
| 5. AGE Yrs | 66 |
| 6. SEX | M |
| 7. DATE OF DEATH | 08/11/2019 |
| 8. HOUR | 0900 |
| 8. BIRTH STATE/FOREIGN COUNTRY | CA |
| 10. SOCIAL SECURITY NUMBER | 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 |
| 11. EVER IN U.S. ARMED FORCES? | NO |
| 13. MARITAL STATUS | DIVORCED |
| 12. EDUCATION | ASSOCIATE |
| 16. DECEDENT'S RACE | AFRICAN AMERICAN |
| 17. USUAL OCCUPATION | SMALL BUSINESS OWNER |
| 18. KIND OF BUSINESS OR INDUSTRY | TERMITE CONTROL |
| 19. NUMBER OF YEARS IN OCCUPATION | 35 |
| 21. CITY | LOS ANGELES |
| 22. COUNTY/PROVINCE | LOS ANGELES |
| 23. ZIP CODE | 90008 |
| 24. YEARS IN COUNTY | 66 |
| 25. STATE/FOREIGN COUNTRY | CA |

20. DECEDENT'S RESIDENCE: 4238 3RD AVE

26. INFORMANT'S NAME, RELATIONSHIP: TAMEKA R CROSLAND, DAUGHTER
27. INFORMANT'S MAILING ADDRESS: 4238 3RD AVE, LOS ANGELES, CA 90008

| Field | Value |
|---|---|
| 29. NAME OF SURVIVING SPOUSE/SRDP—FIRST | |
| 31. NAME OF FATHER/PARENT—FIRST | JAMES |
| 32. MIDDLE | TERRY |
| 33. LAST | CROSLAND JR |
| 34. BIRTH STATE | CA |
| 35. NAME OF MOTHER/PARENT—FIRST | DOLORES |
| 36. MIDDLE | COSTELLA |
| 37. LAST (BIRTH NAME) | SWEENEY |
| 38. BIRTH STATE | MD |

| Field | Value |
|---|---|
| 39. DISPOSITION DATE | 08/22/2019 |
| 40. PLACE OF FINAL DISPOSITION | ROSE HILLS MEMORIAL PARK, 3888 WORKMAN MILL RD, WHITTIER, CA 90601 |
| 41. TYPE OF DISPOSITION(S) | CR/BUIRES |
| 42. SIGNATURE OF EMBALMER | NOT EMBALMED |
| 43. LICENSE NUMBER | |
| 44. NAME OF FUNERAL ESTABLISHMENT | ROSE HILLS MORTUARY |
| 45. LICENSE NUMBER | FD970 |
| 46. SIGNATURE OF LOCAL REGISTRAR | MUNTU DAVIS, M.D. |
| 47. DATE | 08/21/2019 |

| Field | Value |
|---|---|
| 101. PLACE OF DEATH | RESIDENCE |
| 103. COUNTY | LOS ANGELES |
| 104. | 4238 3RD AVE |
| 107. CITY | LOS ANGELES |

107. CAUSE OF DEATH
IMMEDIATE CAUSE (A) CARDIOPULMONARY ARREST
(B) MALIGNANT NEOPLASM OF BLADDER

112. OTHER SIGNIFICANT CONDITIONS: NONE

113. WAS OPERATION PERFORMED: NO

114. I CERTIFY... SIGNATURE: POOYA MOBASSERI D.O.
116. LICENSE NUMBER: 20A10982
117. DATE: 08/21/2019
08/08/2019 | 08/11/2019
117. TYPE ATTENDING PHYSICIAN'S NAME: POOYA MOBASSERI D.O.
15821 VENTURA BLVD #516, ENCINO CA 91436

125. PLACE OF INJURY

STATE REGISTRAR: A B C D E

*01001004269070*

CALOSANGO1

---

**CERTIFIED COPY OF VITAL RECORD**
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

This is a true certified copy of record filed in the County of Los Angeles
Department of Public Health if it bears the Registrar's signature in purple ink.



002159494



Health Officer ,MD

DATE ISSUED **AUG 28 2019**



This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# Exhibit B

4

27
28

# *LIVING TRUST OF JAMES TERRY CROSLAND, III*

## *Dated August 08, 2019*

This Living Trust Agreement (this "Agreement"), dated August 08, 2019, between JAMES TERRY CROSLAND, III (the "Grantor") of LOS ANGELES, California and JAMES TERRY CROSLAND, III of LOS ANGELES, California (the "Trustee").

In consideration of the mutual covenants and promises set forth in this Agreement, the Grantor and the Trustee agree as follows:

**I. PURPOSE.** The purpose of this Agreement is to establish a Trust to receive and manage assets for the benefit of the Grantor during the Grantor's lifetime, and to further manage and distribute the assets of the Trust upon the death of the Grantor.

**II. NAME.** The trust created hereby shall be known as the "Living Trust of JAMES TERRY CROSLAND, III dated August 08, 2019." The assets and dealings of the Trust may, however, be held and conducted in the name of the Trustee and, to the extent otherwise permitted herein, also in the name of a nominee.

**III. FUNDING OF TRUST.** Grantor has transferred, assigned, conveyed and delivered to the Trustee the property described in Schedule A attached and made a part hereof; and said property and any and all other property which may be hereafter assigned, conveyed and delivered to said Trustee by the Grantor or another person as hereinafter provided, is intended to constitute the trust estate and to be held by the Trustee IN TRUST for the uses and purposes and subject to the terms and conditions hereinafter set forth.

Grantor or any other person, with the consent of the Trustee, may at any time or from time to time deed, grant, devise, bequest, gift or otherwise, cause additional property to be transferred to and administered as a part of the trust estate created hereunder. Any such transfer may be evidenced by the receipt of the Trustee, and each such receipt shall be conclusive evidence of the consent of said Trustee to the transfer thereof.

**IV. MANAGEMENT OF TRUST ASSETS.** The Trustee shall manage and distribute the Trust assets for the benefit of the Grantor and the Grantor's successor(s) in interest in accordance with the terms of this Agreement.

**V. PAYMENTS DURING THE GRANTOR'S LIFETIME.** During the Grantor's lifetime, the Trustee shall pay all of the net income of this Trust, and also such sums from principal as the Grantor may request, to or for the benefit of the Grantor, or as the Grantor may designate. Such payments shall be made at least N/A_____. The Grantor may change the amount of the payments at any time by providing written notice to the Trustee. Any excess income not distributed at Grantor's death shall be added to principal at the discretion of the Trustee.

*A. Payments During a "Disability" of the Grantor.* During any period that the Grantor has a "disability", the Trustee may pay to or for the benefit of the Grantor such amounts of income and principal as the Trustee believes in the Trustee's sole discretion to be required for (i) the Grantor's support, comfort and welfare, (ii) the Grantor's accustomed manner of living, or (iii) any purpose that the Trustee believes to be in the best interest of the Grantor. Furthermore, in the event of illness or other disability of Grantor, the Trustee may, in lieu of making payment of such income directly to the Grantor, use and apply for the benefit of the Grantor so much of such income and also the principal of the Trust estate for the proper care, comfort, medical or surgical attention, maintenance and support of Grantor. The Trustee, in such discretion, may pay over to any relative or legal guardian of the Grantor, all or any portion of such income or principal for any of said purposes in lieu of using and applying said funds for the benefit of Grantor.

*B. Disability Defined.* For the purposes of this Trust, "disability" shall mean a legal disability or the inability to provide prompt and intelligent consideration to financial matters by reason of illness or mental or physical disability. The determination of whether the Grantor has a disability shall be made by the Grantor's most recent attending physician. The Trustee shall be entitled to rely on written notice of that determination.

**VI. DEATH OF THE GRANTOR.** Upon the death of the Grantor, and after the payment of the Grantor's just debts, funeral expenses, and expenses of last illness, the following distributions shall be made:

*A. Specific Distributions.* The following specific distributions shall be made from the assets of the Trust. However, such distributions (other than distributions, if any, to the Grantor's children) shall be made only if the Grantor's children do not survive the Grantor.

HOUSE shall be distributed to TAMEKA RENEE CROSLAND. If this beneficiary does not survive the Grantor, this bequest shall be distributed with the residuary assets of this Trust.

BMW shall be distributed to TAMEKA RENEE CROSLAND. If this beneficiary does not survive the Grantor, this bequest shall be distributed with the residuary assets of this Trust.

CADILLAC ESCALADE TRUCK shall be distributed to TAMEKA RENEE CROSLAND. If this beneficiary does not survive the Grantor, this bequest shall be distributed with the residuary assets of this Trust.

BANK ACCOUNTS shall be distributed to TAMEKA RENEE CROSLAND. If this beneficiary does not survive the Grantor, this bequest shall be distributed with the residuary assets of this Trust.

ELLAMAY WARD 2001 TRUST (RIVERSIDE MULTI UNIT PROPERTY) shall be

distributed to TAMEKA RENEE CROSLAND. If this beneficiary does not survive the Grantor, this bequest shall be distributed to JAMIYA RENE CROSLAND. If this beneficiary does not survive the Grantor, this bequest shall be distributed with the residuary assets of this Trust.

*B. Residuary Assets.* The residuary assets of this Trust shall be distributed to (or retained by) the following beneficiaries in the percentages as shown:

100% - the Grantor's children in equal shares. If a child does not survive the Grantor, such deceased child's share shall be distributed in equal shares to the children of such deceased child who survive the Grantor, by right of representation. If a child does not survive the Grantor and has no children who survive the Grantor, such deceased child's share shall be distributed in equal shares to the Grantor's other children, if any, or to their respective children by right of representation. If no child of the Grantor survives the Grantor, and if none of the Grantor's deceased children are survived by children, this share shall be distributed proportionately to the other distributee(s) listed under this provision.

0 % - NONE of N/A _____, _____. If this person does not survive the Grantor, this share shall be distributed proportionately to the other distributee (s) listed under this provision.

100 % - Total Percentage.

VII. TRUSTEE POWERS. The Trustee, in addition to other powers and authority granted by law or necessary or appropriate for proper administration of the Trust, shall have the following rights, powers, and authority without order of court and without notice to anyone:

*A. Receive Assets.* To receive, hold, maintain, administer, collect, invest and re-invest the trust assets, and collect and apply the income, profits, and principal of the Trust in accordance with the terms of this instrument.

*B. Receive Additional Assets.* To receive additional assets from other sources, including assets received under the Will of the Grantor or any other person.

*C. Standard of Care.* To acquire, invest, reinvest, exchange, retain, sell, and manage estate and trust assets, exercising the judgment and care, under the circumstances then prevailing, that persons of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of that standard, the Trustee is authorized to acquire and retain every kind of

property, real, personal or mixed, and every kind of investment, specifically including, but not by way of limitation, bonds, debentures and other corporate obligations, and stocks, preferred or common, that persons of prudence, discretion and intelligence acquire or retain for their own account, even though not otherwise a legal investment for trust funds under the laws and statutes of the United States or the state under which this instrument is administered.

*D. Retain Assets.* To retain any asset, including uninvested cash or original investments, regardless of whether it is of the kind authorized by this instrument for investment and whether it leaves a disproportionately large part of the estate or trust invested in one type of property, without regard to any legal limitations upon investments and the principals of diversification, for as long as the Trustee deems advisable.

*E. Dispose of or Encumber Assets.* To sell, option, mortgage, pledge, lease or convey real or personal property, publicly or privately, upon such terms and conditions as may appear to be proper, and to execute all instruments necessary to effect such authority.

*F. Settle Claims.* To compromise, settle, or abandon claims in favor of or against the Trust.

*G. Manage Property.* To manage real estate and personal property, borrow money, exercise options, buy insurance, and register securities as may appear to be proper.

*H. Allocate Between Principal and Income.* To make allocations of charges and credits as between principal and income as in the sole discretion of the Trustee may appear to be proper.

*I. Employ Professional Assistance.* To employ and compensate counsel and other persons deemed necessary for proper administration and to delegate authority when such delegation is advantageous to the trust.

*J. Distribute Property.* To make division or distribution in money or kind, or partly in either including disproportionate in-kind distributions, at values to be determined by the Trustee, and the Trustee's judgment shall be binding upon all interested parties.

*K. Enter Contracts.* To bind the Trust by contracts or agreements without assuming individual liability for such contracts.

*L. Exercise Stock Ownership Rights.* To vote, execute proxies to vote, join in or oppose any plans for reorganization, and exercise any other rights incident to the ownership of any stocks, bonds or other properties of the Trust.

*M. Duration of Powers.* To continue to exercise the powers provided in this Agreement after the termination of the Trust until all the assets of the Trust have been distributed.

*N. Hold Trust Assets as a Single Fund.* To hold the assets of the Trust, shares, or portions of the Trust created by this instrument as a single fund for joint investment and management,

without the need for physical segregation, dividing the income proportionately among them.
Segregation of the various trust shares need only be made on the books of the Trustee for
accounting purposes.

*O. Compensation.* To receive reasonable compensation for the Trustee's services under this
Agreement and be exonerated from and to pay all reasonable expenses and charges of the
Trust.

*P. Loans to Beneficiaries.* To make loans to any trust beneficiary for the purpose of
providing the beneficiary with the funds necessary to take advantage of exceptional business
opportunities or to provide for the needs of the beneficiaries and their families.

*Q. Methods of Distribution.* To make payments to or for the benefit of any beneficiary
(specifically including any beneficiary under any legal disability) in any of the following ways:
(a) directly to the beneficiary, (b) directly for the maintenance, welfare and education of the
beneficiary, (c) to the legal or natural guardian of the beneficiary, or, (d) to anyone who at the
time shall have custody and care of the person of the beneficiary. The Trustee shall not be
obliged to see to the application of the funds so paid, but the receipt of the person to whom
the funds were paid shall be full acquittance of the Trustee.

## VIII. ADDITIONAL TRUSTEE PROVISIONS. These additional provisions shall apply
regarding the Trustee.

*A. Grantor as Trustee.* If at any time the Grantor is the Trustee, the Grantor may appoint a
successor Trustee, to become effective immediately or upon any stated contingency, by
making such designation in writing. Such designee shall become the successor Trustee upon
acceptance of the terms and conditions of this Agreement.

*B. Successor Trustee.* If at any time a Trustee cannot serve because of the Trustee's
disability (as previously defined), death, or other reason, TAMEKA RENEE CROSLAND,
of LOS ANGELES, California, is designated as the successor Trustee, to serve without
bond. If such designee(s) is/are unable to serve for any reason, TAMEKA RENEE
CROSLAND, of LOS ANGELES, California, is designated as the alternate successor
Trustee, to serve without bond. Such designee(s) shall become the successor Trustee(s) upon
acceptance of the terms and conditions of this Agreement.

*C. Resignation of Trustee.* Any Trustee may resign by giving written notice to the
beneficiaries to whom income could then be distributed. Such resignation shall take effect on
such date specified in the notice, but not earlier than thirty (30) days after the date of delivery
of such written resignation unless an earlier effective date shall be agreed to by the income
beneficiaries.

*D. Adult Beneficiary Rights.* If the Trustee resigns or for any reason ceases to serve as
Trustee, and if the successor Trustee(s) designated by the Grantor, if any, fail or cease to
serve as Trustee, then the adult beneficiaries to whom income could then be distributed,

together with the adult beneficiaries to whom principal would be distributed if the Trust were then to terminate, may by majority action in writing appoint a successor Trustee. If agreement of a majority of the beneficiaries cannot be obtained within sixty (60) days, a successor Trustee shall be appointed by the court having general jurisdiction of the Trust. Any successor Trustee appointed shall have all the rights conferred upon the original Trustee and shall be bound by the provisions of this Trust.

*E. Accounting.* The Trustee shall provide an accounting to the Beneficiary (or beneficiaries) on at least a(n) N/A _____ basis. If a beneficiary has a "disability", the Trustee shall provide the accounting to a guardian or conservator, if any.

*F. Bond.* No bond shall be required of any Trustee.

**IX. RIGHT TO DIRECT INVESTMENTS.** At any time that the Trust has investments, and provided that the Grantor does not have a "disability", the Grantor may direct any Trustee to purchase, sell, or retain any trust investment.

**X. REVOCATION OR AMENDMENT.** During the Grantor's lifetime, the Grantor may revoke at any time, and/or the Grantor may amend, this Agreement by delivering to the Trustee an appropriate written revocation or amendment, signed by the Grantor. If the Trustee consents, the powers of revocation, but not the power of amendment, may be exercised by a duly appointed and acting attorney-in-fact for the Grantor for the purpose of withdrawing assets from the Trust.

**XI. GOVERNING LAW.** This Agreement shall be construed in accordance with the laws of the State of California.

**XII. PERPETUITIES SAVINGS CLAUSE.** Despite any other provision of this Agreement to the contrary, the trust created by this Agreement shall terminate no later than 21 years after the death of the last surviving beneficiary of this Agreement who is living at the time of the death of the Grantor, at the end of which time distribution of all principal and all accrued, accumulated and undistributed income shall be made to the persons then entitled to distributions, in the manner and proportions herein stated free of trust.

**XIII. SEVERABILITY.** If any portion of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

## XIV. MISCELLANEOUS PROVISIONS.

*A. Paragraph Titles and Gender.* The titles given to the paragraphs of this Trust are inserted for reference purposes only and are not to be considered as forming a part of this Trust in interpreting its provisions. All words used in this Trust in any gender shall extend to and include all genders, and any singular words shall include the plural expression, and vice versa, specifically including "child" and "children", when the context or facts so require, and any pronouns shall be taken to refer to the person or persons intended regardless of gender or number.

*B. Thirty Day Survival Requirement.* For the purposes of determining the appropriate distributions under this Trust, no person or organization shall be deemed to have survived the Grantor, unless such person or entity is also surviving (or in existence) on the thirtieth day after the date of the Grantor's death.

*C. Liability of Fiduciary.* No fiduciary who is a natural person shall, in the absence of fraudulent conduct or bad faith, be liable individually to any beneficiary of the Grantor's trust estate, and the Grantor's trust estate shall indemnify such natural person from any and all claims or expenses in connection with or arising out of that fiduciary's good faith actions or nonactions of the fiduciary, except for such actions or nonactions which constitute fraudulent conduct or bad faith. No successor trustee shall be obliged to inquire into or be in any way accountable for the previous administration of the trust property.

*D. Spouse.* The Grantor is not currently married to anyone.

*E. Children.* The names of the Grantor's children are:

> TAMEKA RENEE CROSLAND
> JAMIYA RENEE CROSLAND

All references in this Trust to "the Grantor's child" or "the Grantor's children" include the above child or children.

Signature: _____
JAMES TERRY CROSLAND, III, Grantor


Signature: _____
JAMES TERRY CROSLAND, III, Trustee

> A notary public or other officer completing this certificate verifies only the identity of the
> individual(s) who signed the document to which this certificate is attached, and not the
> truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES, CALIFORNIA USA

On this _9_ day of, _AUGUST_ , _2019_, before me _Clarice Lee,_
_Notary Public_ , personally appeared JAMES TERRY CROSLAND, III and
JAMES TERRY CROSLAND, III, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
            CLARICE LEE
         COMM. #2162502
      Notary Public - California
        Los Angeles County
  My Comm. Expires Aug. 31, 2020
```

_____    (Notary Seal)
Signature of Notary Public

## Schedule A
### *List of Assets to be Held by the Trustee*

The Grantor has transferred, assigned, conveyed and delivered to the Trustee the following assets
to be held, managed and distributed under the terms of this Living Trust as described above:

Name: HOUSE
Value: $700,000.00
Description: _____

Name: BANK ACCOUNTS
Value: $0.00
Description: _____

Name: VEHICLES
Value: $25,000.00
Description: BMW, Cadillac, Pickup truck

Name: RETIREMENT
Value: $0.00
Description: _____

Name: SOCIAL SECURITY
Value: $0.00
Description: 1,0000

Name: ELLAMAY WARD 2001 TRUST
Value: $650,000.00
Description: MULTI UNIT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit C

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | TELEPHONE AND FAX NOS. | DE-150

Alex R. Borden SBN180301/Stephanie Chao SBN294712   310/787-7577
BORDEN·LAW OFFICE                                   310/787-7067
1518 Crenshaw Boulevard
Torrance, California 90501

ATTORNEY FOR (Name): Administrator, In Pro Per

**FOR COURT USE ONLY**

**FILED**
Superior Court of California
County of Los Angeles

MAR 30 2023

David W. Slayton, Executive Officer/Clerk of Court

By: S. Saund, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk - Central District

ESTATE OF (Name):

JAMES TERRY CROSLAND, III, aka JAMES T. CROSLAND, III,
                                                          DECEDENT

## LETTERS

- [ ] **TESTAMENTARY**
- [✓] **OF ADMINISTRATION WITH WILL ANNEXED**
- [ ] **OF ADMINISTRATION**
- [ ] **SPECIAL ADMINISTRATION**

CASE NUMBER

23STPB01325

### LETTERS

1. [ ] The last will of the decedent named above having been proved, the court appoints (name):

   a. [ ] executor.
   b. [ ] administrator with will annexed.

2. [✓] The court appoints (name):
   Alex R. Borden
   a. [✓] administrator of the decedent's estate.
   b. [ ] special administrator of decedent's estate
      (1) [ ] with the special powers specified in the Order for Probate.
      (2) [ ] with the powers of a general administrator.
      (3) [ ] letters will expire on (date):

3. [✓] The personal representative is authorized to administer the estate under the Independent Administration of Estates Act  [✓] with full authority
   [ ] with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. [ ] The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

(SEAL)

Date:     MAR 3 0 2023

Clerk, by   David W. Slayton

_____
(DEPUTY)
S. Saund

### AFFIRMATION

1. [ ] **PUBLIC ADMINISTRATOR:** No affirmation required (Prob. Code, § 7621(c)).

2. [✓] **INDIVIDUAL: I solemnly affirm** that I will perform the duties of personal representative according to law.

3. [ ] **INSTITUTIONAL FIDUCIARY** (name):

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer.
   (Name and title):

4. Executed on (date): March 15, 2023
   at (place): Torrance                    , California.

   ▶  _____
      (SIGNATURE)

### CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

(SEAL)

Date.

Clerk, by

_____
(DEPUTY)

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

**LETTERS**
(Probate)

Probate Code, §§ 1001, 8403,
8405, 8544, 8545,
Code of Civil Procedure, § 2015.6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit D

# BORDEN LAW OFFICE

### 1518 CRENSHAW BOULEVARD
### TORRANCE, CALIFORNIA 90501
TEL: (310) 787-7577 • FAX: (310) 787-7067
ALEX@BORDENLAWOFFICE.COM

May 8, 2023

Quality Loan Service Corporation
2763 Camino Del Rio S
San Diego, California 92108

      Re:    TS No. CA-22-943930-AB
             APN:  5022-027-023
             Estate of James Crosland (LASC Case No. 23STPB01325)

To Whom This May Concern,

In reference to your "Notice of Default and Election to Sell Under Deed of Trust" recorded on January 17, 2023, any your "Notice of Trustee's Sale" recorded on April 21, 2023, the undersigned is the court-appointed Administrator of the Estate of James Terry Crosland, III, the Trustor under Instrument No. 20110567995 recorded April 20, 2011. Attached for your reference are the following:

        Copy of Death Certificate of James Terry Crosland
        Certified Letters of Administration issued to Alex R. Borden; and
        Order Appointing Alex R. Borden as Administrator with full authority.

As the Administrator of the Estate of the deceased Trustor/Borrower, I have various rights to obtain information (including an accounting, a reinstatement quote and a payoff quote) about the potential sale of the subject real property located at 4238 3rd Avenue, Los Angeles, California 90008. I never received Notice of Default and Election to Sell Under deed of Trust, and my authority over the Estate of James Crosland was issued by the Los Angeles Superior Court on March 30, 2023 when my Letters of Administration were issued.

I urge you and Quality Loan Service Corporation to forego proceeding with the Trustee's Sale currently set for May 18, 2023 at 9:00 am, which will afford Quality Loan Service Corporation to cure the defects that exist in the foreclosure process and allow the Estate to make arrangements to reinstate and/or payoff the loan. Please let me know as soon as possible regarding this request so we can forego initiating legal action to seek injunctive relief.

Thank you for your anticipated prompt response in this matter.

Very truly yours,

ALEX R. BORDEN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit E

**From:** **Tameka Crosland** tamekacrosland@yahoo.com
**Subject:** Fwd: CA-22=943930-AB November 30th date of sale
**Date:** January 11, 2024 at 2:51 PM
**To:** theview939496@yahoo.com

Sent from my iPhone

Begin forwarded message:

From: Tameka Crosland <tamekacrosland@yahoo.com>
Date: December 14, 2023 at 11:25:47 PM PST
To: diana@foxmjlaw.com
Subject: Fw: CA-22=943930-AB November 30th date of sale

----- Forwarded Message -----
**From:** abtsounit <abtsounit@mccarthyholthus.com>
**To:** Tameka Crosland <tamekacrosland@yahoo.com>
**Cc:** Alex Borden <alex@bordenlawoffice.com>; Linda Lackey <linda@bordenlawoffice.com>
**Sent:** Tuesday, November 28, 2023 at 02:21:57 PM PST
**Subject:** RE: CA-22=943930-AB November 30th date of sale

Hello,
Stephanie reached out earlier to our payoff/reinstatement department to get you the requested quotes, as well as she reached out to shellpoint.

Thank you

Lajahnique Webster | Assistant Trustee Sales Officer - Team 2 (AZ, CA, NV)

Quality Loan Service Corporation
2763 Camino Del Rio S., Ste. 200, San Diego, CA 92108
(619).645.7711 Ext#: 2107| Fax: 619-568-3589
lwebster@qualityloan.com
"Service Second to None"

Providing Foreclosure Trustee Services in: AZ | CA | ID | NV |OR | WA

Federal law requires us to advise you that communication with our office could be interpreted as an attempt to collect a debt and that any information obtained will be used for that purpose.

NOTICE REGARDING ELECTRONIC COMMUNICATION: If you wish to opt out of electronic communication, please forward this email to OptOut@QualityLoan.com, with the word "STOP" in the subject line of the email. Please be advised that we may still be required to send you statutory and court-mandated notices pursuant to applicable law.

The information contained herein may be privileged and protected by the attorney/client and/or other privilege. It is confidential in nature and intended for use by the intended addressee only. If you are not the intended recipient, you are hereby expressly prohibited from dissemination distribution, copy or any use whatsoever of this transmission and its contents. If you receive this transmission in error, please reply or call the sender and arrangements will be made to retrieve the originals from you at no charge.

If you have received excellent customer service please let us know:
QLSFeedback@qualityloan.com.

Should escalation be required, please contact: Adriana Banuelos at abanuelos@qualityloan.com

-----Original Message-----
From: Tameka Crosland <tamekacrosland@yahoo.com>
Sent: Tuesday, November 28, 2023 2:15 PM
To: abtsounit <abtsounit@McCarthyHolthus.com>
Cc: Alex Borden <alex@bordenlawoffice.com>; Linda Lackey <linda@bordenlawoffice.com>
Subject: CA-22=943930-AB November 20th date of sale

To whom it may concern,

My attorney Alex Borden never was provided the requested information and therefore can't  legally
move forward with the sale on 11/30/2023.

Please see attachments.

Respectfully

Tameka Crosland

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# Exhibit F

26
27

28

8 Cal.4th 1220 (1994)
885 P.2d 877
36 Cal. Rptr.2d 464

### FORD & VLAHOS, Plaintiff, Cross-defendant and Appellant,

v.

### ITT COMMERCIAL FINANCE CORP., Defendant, Cross-complainant and Appellant.

<u>Docket No. S035748.</u>

**Supreme Court of California.**

December 15, 1994.

COUNSEL

Kline & Joseph, Stephen L. Joseph, Richard Collier Sears, Nossaman, Guthner, Knox & Elliott, William T. Bagley and Douglas J. Maloney for Plaintiff, Cross-defendant and Appellant.

Christopher M. Micheli and Nancy M. McDonough as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Howard, Rice, Nemerovski, Canady, Robertson & Falk, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, Jerome B. Falk, Jr., Bernard A. Burk and Matthew F. Weil for Defendant, Cross-complainant and Appellant.

Christopher E. Chenoweth as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

OPINION

MOSK, J.

This case presents a narrow question of law: whether the California version of Uniform Commercial Code section 9-504, subdivision (3), definitively limits a secured party's duty to advertise the sale of collateral merely to placing a legal notice in a newspaper. We conclude it does not, and therefore reverse the Court of Appeal's judgment and remand the case for consideration of the secured party's other claims of error.

Defendant secured party lent plaintiff debtor money to buy a Lockheed Hercules C-130A aircraft and acquired a purchase-money security interest in it. The parties agreed that California law would govern the security agreement.

Plaintiff defaulted on the loan and was notified by defendant that it would repossess the aircraft. On August 26, 1987, defendant informed plaintiff it would hold a public sale of the C-130A on September 3 at Chandler, Arizona.

On August 28, 1987, defendant advertised the sale's time and place in the Arizona Republic, a newspaper of general circulation in Maricopa County, Arizona, where Chandler is located. The advertisement stated that the United States Department of State would have to approve "the purchaser and the secured party's right to bid [on] and purchase" the aircraft. But the advertisement apparently inadvertently omitted the information about whom to contact to qualify as a bidder. That error caused defendant to place a corrected advertisement in the Phoenix (Arizona) Gazette on September 2.

Defendant, the sole bidder at the auction, bought the C-130A the next day for $1 million. After the sale defendant's agent advertised the aircraft in Trade-A-Plane. The agent testified that Trade-A-Plane is "the Bible of aircraft sales in this country." In March 1988 defendant agreed to sell the C-130A to African Air Trans, Inc., for $1,525,000, eventually, according to defendant, receiving $1,487,000 from that company.

Plaintiff sued for improper disposition of the collateral and defendant cross-complained for a deficiency plaintiff allegedly

owed after credit for the $1 million foreclosure-sale bid.

The trial court found the aircraft's sale commercially unreasonable because accompanied by insufficient publicity and hence the subject of too few bids. The court also found the notices of sale "legally insufficient" for various reasons. The court's statement of decision recited:

"The only notice of the auction was the *Arizona Republic* newspaper ad placed in the auction section of the newspaper. The ad contained an incomplete sentence regarding qualifications to purchase.

"The Court finds that a correction appeared in the *Phoenix Gazette* on September 2, 1987, one day prior to the auction.

"The Court finds that there was no evidence that the *Arizona Republic* or *Phoenix Gazette* were publications circulated among or read by potential purchasers of this Aircraft.

"The Court finds that no publicity for the September auction sale was given in aviation trade journals, such as *Trade-A-Plane*. ...

"The Court concludes that publication of a notice for the September 3 auction of this Aircraft in the *Phoenix Gazette* was legally insufficient to satisfy [California Uniform Commercial Code section] 9504 in that it did not conform to the five-day time requirement of the statute.

    "The Court finds that the *Arizona Republic* notice affirmatively stated that prequalification as a bidder was necessary.

"The Court concludes that the omission of any contact name or telephone number to obtain prequalification information rendered the *wording* contained in the *Arizona Republic* notice legally insufficient under [California Uniform Commercial Code section] 9504....

"The Court finds that, other than the newspaper notices, Defendant ITT made no efforts to contact potential purchasers regarding the September 3 auction.

"The Court finds that Defendant ITT had available to it the resources of an aircraft broker ... who knew potential aircraft buyers and the means of publicity to announce aircraft auctions....

"The Court concludes that Defendant ITT did not conduct the auction sale on September 3, 1987 in good faith and in a commercially reasonable manner as required by [California Uniform Commercial Code section] 9504...."

With regard to the collateral's value, the court ruled, "based on ... expert opinion testimony ..., that the fair market value of the Aircraft on the date of sale, September 3, 1987, was $3.8 million."

On the basis of that valuation, the court set plaintiff's damages at $3.8 million, but granted defendant an offset of $996,050, a figure representing the sum of plaintiff's debt to defendant and defendant's expenses in repossessing, refurbishing and selling the aircraft. The ensuing judgment netted plaintiff $2,803,950.

The Court of Appeal reversed the judgment in part. As relevant here, the majority decided the Legislature had created a "safe harbor" in California Uniform Commercial Code section 9504, subdivision (3) — unlabeled statutory references are to this code — whereby satisfying the statute's notice requirement precluded any challenge to the sale's commercial reasonableness on the basis of inadequate publicity. The majority wrote, "ITT [defendant] contends that by specifying the time and manner for notice of a public sale, our Legislature intended to establish a bright-line rule to prevent disputes over the 'reasonableness' of presale publicity. This contention is supported by the legislative history of section 9504(3)." Thus, the majority          reasoned, "Compliance with the letter of section 9504(3) creates a safe harbor against claims that the publicity for a public sale was inadequate." Acknowledging that "there may be situations ... where such a limited notice would seem less than fair," the majority stated in essence that any complaints should be addressed to the Legislature. The majority thus rejected the reasoning of *American Business Credit Corp. v. Kirby* (1981) 122 Cal. App.3d 217, 221 [175 Cal. Rptr. 720], and *Clark Equipment Co. v. Mastelotto, Inc.* (1978) 87 Cal. App.3d 88, 96-97 [150

Cal. Rptr. 797], "cases that have suggested, contrary to our conclusion, that a single, timely newspaper notice might not be sufficient," because those cases "did not consider section 9504(3)'s legislative history, or address whether the statute's notice provisions were meant to conclusively establish what is required to publicize an auction of collateral."

The dissent declared that the majority's bright-line rule was unfounded. Citing the cases mentioned above, the dissent observed that, "In each of these cases the court treated adequate notice and publicity adequate to be commercially reasonable as two distinct inquiries. Adequate notice, that is notice which met the minimum requirements of the subdivision, did not define the scope of commercially reasonable publicity or advertising." The dissent continued, "In my view the specific notice requirements imposed by the section define the minimum notice which must be given. I do not, unlike the majority, construe *notice* to be coextensive with *publicity*. The duty to publicize a sale adequately arises from the general duty of the creditor to act 'in a commercially reasonable manner.' What is commercially reasonable publicity must turn on the specific circumstances of what the collateral is and how it is to be sold. [¶] ... The published notice given here was not, standing alone, commercially reasonable publicity for the sale of a multimillion dollar aircraft."

Because the Court of Appeal majority concluded that the Legislature had conclusively defined the publicity required for a sale of foreclosed collateral, it did not address defendant's other claims of error, including contentions regarding the court's calculation of the aircraft's value, its valuation of defendant's expenses attendant to repossessing and selling the aircraft, and its asserted refusal to find that plaintiff was not the real party in interest.

We granted plaintiff debtor's petition for review. For its part, defendant secured party requests that we take judicial notice of certain materials bearing on legislative intent. That request, which is unopposed, is also granted. (Evid. Code, §§ 452, subds. (c), (h), 459, subd. (a).)

(1a) Defendant contends that the references to notice in subdivision (3) of section 9504 conclusively define the publicity required for a public sale of foreclosed collateral. Defendant reasons that because it met the statute's notice requirements, the court could not properly find the sale commercially unreasonable for want of sufficient publicity. In sum, it contends the Court of Appeal majority correctly understood the meaning of section 9504, subdivision (3).

We interpret the California Uniform Commercial Code otherwise. As we will describe, notice on the one hand, and publicity or advertising on the other, are separate but related concepts under the California Uniform Commercial Code. (We define advertising broadly as all efforts to alert possible buyers to an impending sale, including professionally designed displays in public media and flyers or brochures circulated to a narrower audience.)

The Legislature enacted a modified form of Uniform Commercial Code section 9-504, subdivision (3). (Compare Stats. 1963, ch. 819, § 1, pp. 1993-1994, with 3B West's U. Com. Code, pp. 127-129.) Having been amended in certain minor respects irrelevant to our inquiry, section 9504, subdivision (3), now provides in relevant part: "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. [Ordinarily] the secured party must give to the debtor ... and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice ..., a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor ... and to any other secured party ... at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also [ordinarily] be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held.... The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. Any sale of which notice is          delivered or mailed and published as herein provided and which is held as herein provided is a public sale."[1]

By its plain terms, section 9504, subdivision (3), provides that the secured party is to "act[ ] in good faith and in a commercially reasonable manner" when auctioning foreclosed personalty. (See also § 1203.) The term "commercially reasonable" is again articulated, and is partially defined, in section 9507, subdivision (2), which provides in relevant part,

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that
selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially
reasonable manner. If       the secured party either sells the collateral in the usual manner in any recognized market
therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity
with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially
reasonable manner."[2]

Read together, sections 9504, subdivision (3), and 9507, subdivision (2), cast considerable doubt on the Court of Appeal
majority's view that as long as the statutory notice requirements are met, the publicity attending a sale of foreclosed
collateral is deemed to be commercially reasonable. Section 9507 provides that property sold by methods a responsible
dealer would utilize is sold in a commercially reasonable manner. A dealer in the type of property repossessed here — a
valuable airplane — surely would advertise its auction in the relevant market by, for example, informing brokers, placing
reasonably prominent announcements in recognized trade journals, or contacting individuals or entities known to be
seeking an airplane of the type for sale. (See _Grumman Credit_ v. _Rivair Flying Service_ (Okla. 1992) 845 P.2d 182, 186
[845 P.2d 182]; _Contrail Leasing Partners_ v. _Consolidated Airways_ (7th Cir.1984) 742 F.2d 1095, 1099; _C.I.T.
Corporation_ v. _Lee Pontiac, Inc._ (9th Cir.1975) 513 F.2d 207, 210.) To be sure, nowhere does subdivision (2) of section
9507 explicitly state that failing to sell collateral of this type as would a responsible dealer makes the sale commercially
unreasonable. But it is difficult to read the law any other way with regard to the valuable type of collateral at issue here.
(See _Canadian Commercial Bank_ v. _Ascher Findley Co._ (1991) 229 Cal. App.3d 1139, 1149 [280 Cal. Rptr. 521] ["A
commercially reasonable disposition is presumed to be in good faith and at the greatest possible market rate."].)

And yet defendant's interpretation of section 9504, subdivision (3), would simply nullify section 9507, subdivision (2),
whenever complying with the former statute's formal notice requirements would not yield the kind of       publicity a
responsible dealer would generate to sell a chattel of the type foreclosed. We cannot conclude that the Legislature
meant to provide that a sale's advertising is commercially reasonable as long as the bare requirements of formal notice
are met, even if, to sell the type of collateral involved, a responsible dealer would employ more extensive advertising
than placing a legal notice in agate type in an obscure newspaper. Publicity is much too important to a proper sale of
foreclosed collateral for such a hypothesis to be commercially viable. (2) For advertising is sine qua non to attendance
at an auction, and as then-Presiding Justice Panelli explained in _Ford Motor Credit Co._ v. _Price_ (1985) 163 Cal. App.3d
745, 751 [210 Cal. Rptr. 17], "Common sense tells us that the larger the attendance at a public sale of collateral, the
more likely it is that there will be competitive bidding. Competitive bidding helps to assure that the purchase price
approximates the fair market value of the property and also prevents a [secured party] from exaggerating his deficiency
by underbidding." Hence, "[o]ne of the most important elements of commercial reasonableness is the duty to surround
the sale with publicity sufficient to attract a 'lively concourse of bidders.'" (_Westgate State Bank_ v. _Clark_ (1982) 231 Kan.
81 [642 P.2d 961, 970].)

(1b) The importance of advertising as an element of commercial reasonableness was emphasized in _Villella
Enterprises, Inc._ v. _Young_ (1988) 108 N.M. 33 [766 P.2d 293], the facts of which are similar to those the trial court found
here. "We are particularly concerned with the minimal effort exerted by Villella to notify the public of the sale. Notice of
sale should be given to a 'public' reasonably expected to have an interest in the collateral and should be 'published in a
manner reasonably calculated to assure such publicity that the collateral will bring the best possible price from
competitive bidding of a strived-for lively concourse of bidders.' [Citations.] Villella placed an ad only in the _Health City
Sun_, a weekly legal periodical, two weeks prior to the sale. No evidence was produced that the _Health City Sun_ is the
type of publication that would reach prospective bidders for the assets of a bar business. [Citations.] Neither is there any
indication that Villella contacted the individuals who had offered ... to purchase [the business] ... even though he was
aware of their identities." (766 P.2d at p. 297; see also _Commercial Credit Equipment_ v. _Parsons_ (Mo. Ct. App. 1991)
820 S.W.2d 315, 323; _Farmers Equipment Company_ v. _Miller_ (1972) 252 Ark. 1092 [482 S.W.2d 805, 809-810]; _Levers
v. Rio King Land & Inv. Co._ (1977) 93 Nev. 95 [560 P.2d 917, 920].)

The foregoing reasoning clearly applies to the sale of an airplane. (_Dynalectron Corporation_ v. _Jack Richards Aircraft
Co._ (W.D.Okla. 1972) 337       F. Supp. 659, 662-663.) "Although [secured party] offered testimony that it gave notice
of the sale orally to all major airplane brokers in the United States, the judge disbelieved this testimony, and we cannot

say he was clearly wrong to do so. So far as appears, all [secured party] did in the way of notice was to place an inconspicuous ad in one publication of the used-aircraft trade.... There was testimony that a serious effort to interest potential buyers would have required a more conspicuous ad plus advertising in other trade publications as well. The fact that no one showed up for the sale except [secured party] is consistent with the fact that [it] made little effort, on this occasion anyway, to sell the plane." (*Contrail Leasing Partners* v. *Consolidated Airways, supra,* 742 F.2d at p. 1099.)

Our analysis cannot end at this point, however. Defendant has consistently maintained that although a public sale's "time," "place," and "terms" must be "commercially reasonable" (§ 9504, subd. (3)), notice need not meet that standard, because the Legislature specified the notice required, commercially reasonable or not, to the exclusion of any other rule, and we are not free to simply cast aside that language, regardless of the logic of our reasoning. In sum, defendant might assert that just as we conclude defendant's view of notice and advertising would, if adopted, nullify section 9507, subdivision (2) (*ante*, pp. 1229-1230), our discussion in turn renders the notice language of section 9504, subdivision (3), ineffectual, and that "'[a] construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless.'" (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 [14 Cal. Rptr.2d 813, 842 P.2d 112].)

Such an equivalence would be false, however. It could only arise under a mistaken view that the Legislature merged adequate advertising and formal notice into a single requirement for a valid foreclosure sale. In fact the requirements of proper notice and of commercial reasonableness, including reasonable advertising, are distinct, although, as we explain *post*, page 1233, notice by publication is a form of advertising and therefore fulfilling the notice-by-publication requirement will in some circumstances satisfy the requirement of adequate promotion of a sale. (*Am. State Bank of Killdeer* v. *Hewson* (N.D. 1987) 411 N.W.2d 57, 60] [discussing the "twofold obligation ... to conduct the sale of the collateral in a commercially reasonable manner and to provide `reasonable notification of the time and place of any public sale'"]; *Levers* v. *Rio King Land & Inv. Co., supra,* 560 P.2d 917, 919-920 ["In addition to giving reasonable notice, a secured party must, after default, proceed in a commercially reasonable manner to dispose of collateral."]; *Clark Equipment Co.* v. *Mastelotto, Inc., supra,* 87 Cal. App.3d 88, 96.)

(3) The purpose of notice to the debtor and to other secured creditors under the California Uniform Commercial Code is to alert them that their interests may be extinguished very soon. This concept derives from the venerable American legal rule that a private creditor must give formal legal notice before selling a debtor's property at public auction. (*Newman* v. *Jackson* (1827) 25 U.S. [12 Wheat.] 570, 572-574 [6 L.Ed. 732, 732-733]; see 1 Glenn on Mortgages (1943) § 107, p. 644.) Because a nonjudicial foreclosure sale is a "summary sale" (*Podrat* v. *Oberndorff* (1929) 207 Cal. 457, 459 [278 P. 1035, 63 A.L.R. 1308] [discussing pledges and chattel mortgages]) that the secured party is entitled to conduct relatively quickly (see 2 White & Summers, Uniform Commercial Code (3d ed. 1988) § 27-12, p. 605), elementary fairness to the debtor requires that it, other interested parties, and the public receive formal notice so as to protect the debtor from another's self-dealing or an unfairly low auction price (4 Casner, American Law of Property (1952) Mortgages, § 16.207, pp. 505-509).

Such notice requirements have existed in California for many decades. (Civ. Code, §§ 2924f, subd. (b)(1), 2924g, subd. (a) [public auction of real property foreclosed under power of sale]; *Sargent* v. *Shumaker* (1924) 193 Cal. 122, 125 [223 P. 464].) Hence it is wholly unremarkable that a notice requirement found its way into California's version of subdivision (3)(b) of section 6 of the Uniform Trust Receipts Act (1933) (quoted in 9C Thompson's U. Laws Ann. (1957) at p. 247), an immediate predecessor to section 9504 (see 3B West's U. Laws Ann., *supra,* U. Com. Code, com. to § 9-504, p. 129). The California trust receipts law provided that if a trustee defaulted, an entruster in possession of the goods might "on or after default, give notice to the trustee of intention to sell, and may, not less than five days after the serving or sending of such notice, sell the goods ... at public or private sale, and may at a public sale himself become a purchaser.... Notice of sale shall be deemed sufficiently given if in writing, and either (i) personally served on the trustee, or (ii) sent by postpaid ordinary mail to the trustee's last known business address." (Former Civ. Code, § 3016.2, subd. (3)(b), added by Stats. 1935, ch. 716, § 1, pp. 1930, 1934-1935, and repealed by Stats. 1963, ch. 819, § 2, p. 1997.) When section 9504, subdivision (3), supplanted the quoted trust receipts statute, we believe the California drafters decided to retain the notice requirement and to add a notice-by-publication rule akin to that present for public sales of foreclosed real property (former Civ. Code, § 2924; former Code Civ. Proc., § 692, subd. 3, enacted in 1872 and

repealed by Stats. 1982, ch. 1364, § 1, p. 5070.)

In contrast to notice, one purpose of which is to alert the debtor and other secured creditors to take steps to protect their interests, possibly including          locating bidders for their collateral, the purpose of requiring adequate advertising of a foreclosure sale is to force the secured party to ensure the auction is well attended by legitimate bidders, so that the highest commercially reasonable price for the collateral will be obtained.

(1c) But a prime purpose of notice by publication is to provide notice of the auction to the public — i.e., to advertise, in the broad sense of that term, the sale. "Whereas the official text provides only for `reasonable [notification],' the legislation adopted in California explicitly sets out the requirements for notice both to the debtor *and* to the general public when a public sale is to be held." (*Ford Motor Credit Co.* v. *Price, supra,* 163 Cal. App.3d 745, 750.) Hence, there will surely be sales of foreclosed personalty for which the advertising requirement will be wholly satisfied by giving notice by publication as specified in section 9504, subdivision (3).

Failure to comply strictly with the notice-by-publication requirement is fatal to a contention of compliance with section 9504, subdivision (3). (*Ford Motor Credit Co.* v. *Price, supra,* 163 Cal. App.3d at pp. 750-751.) Thus, the minimum advertising required to make the publicity aspect of a sale of foreclosed collateral commercially reasonable is the notice given by publication. But if placing the required legal notice is not a commercially reasonable method of informing potential buyers of the sale's time and place, the sale will fail to meet the requirements of subdivision (3) of section 9504.

We find support for our view that giving proper notice does not necessarily make a sale's publicity aspect commercially reasonable in the Uniform Land Security Interest Act (7A West's U. Laws Ann. (1994 supp.) U. Land Security Interest Act, p. 207 et seq.), which was promulgated in 1985. Section 509, subdivision (a), of the Uniform Land Security Interest Act requires that "every aspect of the sale, including the method, *advertising*, time, place, and terms, must be reasonable." (7A West's U. Laws Ann., *supra,* at p. 247, italics added.) The Uniform Land Security Interest Act's dispositional language mimics the requirement in the Uniform Commercial Code's official text that "every aspect of the disposition including the method, *manner,* time, place and terms must be commercially reasonable" (3B West's U. Laws Ann., *supra,* U. Com. Code, § 9-504, subd. (3), p. 127, italics added), but replaces *manner* with *advertising*. Each uniform law contains, in a separate sentence, a distinct requirement of proper notice, a grammatical and functional separation of notice and reasonableness mirrored in subdivision (3) of California Uniform Commercial Code section 9504.

Naturally, neither the official Uniform Commercial Code text nor that of the Uniform Land Security Interest Act can be considered to divine what the          California Legislature intended in 1963 with regard to personal property. But the parallels in structure between the uniform acts and the California Uniform Commercial Code, and the specific reference to advertising in the Uniform Land Security Interest Act, reinforce our conclusion that fulfilling the notice provisions of section 9504, subdivision (3), does not automatically satisfy that subdivision's separate requirement that the sale's advertising aspect be commercially reasonable.

Our conclusion that the Legislature did not intend to deem the advertising aspect of every sale commercially reasonable merely because the notice requirements are met is supported by the canon that the courts "should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal. Rptr. 577, 523 P.2d 617].) (4) The purpose of the Uniform Commercial Code, in California and elsewhere, was to create a statutory scheme that would yield the fairest and most efficient framework possible for transactions involving personalty and fixtures.

As regards fairness, concepts of reasonableness and good faith are immanent in the code. "[A] basic principle running throughout [the Uniform Commercial Code] ... is that in commercial transactions good faith is required in the performance and enforcement of all agreements or duties." (1 West's U. Laws Ann. (1994 supp.) U. Com. Code, com. to § 1-203, p. 30); see also Cal. U. Com. Code, § 1203, & com. thereto.)

As regards efficiency, the code's article 9 replaced a clutch of security devices — pledges, conditional sales, chattel mortgages, trust receipts, and the like — with a single device, the security interest, the purpose of which was to facilitate secured transactions in personalty and fixtures. (See 2 White & Summers, *op. cit. supra*, § 23-1, pp. 241-242.) As the Court of Appeal herein explained, a consortium of academics, lawyers, and business interests reviewed the Uniform Commercial Code extensively and recommended to the Legislature that a modified version be enacted in California. (Pt. 1 of the Sixth Progress Rep. to the Leg. by the Sen. Fact Finding Com. on Judiciary (1959-1961) the Uniform Commercial Code, 1 appen. to Sen. J. (1961 Reg. Sess.).) This 845-page report (Sixth Progress Report) is the authoritative source of legislative history for section 9504, subdivision (3), and it reflects the great care that was given to drafting the California Uniform Commercial Code.

The Sixth Progress Report contains the final report of the State Bar's Subcommittee on article 9. That panel supported the proposed statutory         scheme because it would "provide[ ] for the creation of security interests with a minimum of formalities and restrictions, in recognition of present-day [business] needs." "In short," the panel explained, "the Article provides a simple and unified structure within which present-day financing on the basis of chattel security can be accomplished with less cost and with greater certainty." (Sixth Progress Rep., *supra*, at p. 397.) This idea was codified in the California Uniform Commercial Code's general provisions. (§ 1102, subd. (2)(a).)

Clearly, fairness and efficiency would both suffer from a rule that giving notice in an obscure publication always will satisfy the advertising aspect of a reasonable sale of foreclosed collateral as long as the other notice requirements have been met. Such a rule would often serve the interest of no one except possibly the foreclosing secured party.

Having set forth the law, we return to the matter at bench.

(5) The inquiry whether a sale was commercially reasonable under section 9504, subdivision (3), including whether it was adequately publicized, is intensively factual and "the answer depends on all of the circumstances existing at the time of the sale." (*Clark Equipment Co. v. Mastelotto, Inc., supra*, 87 Cal.App.3d 88, 96.) A reviewing court must not disturb a trial court's factual findings or conclusion on this question unless no substantial evidence supports them. (*Peery v. Superior Court* (1981) 29 Cal.3d 837, 845 [176 Cal. Rptr. 533, 633 P.2d 198].)

(1d) In this case, substantial evidence supported the trial court's conclusion that the Phoenix newspapers, with their limited circulation, did not provide a forum likely to bring bidders and a fair price for the foreclosed aircraft, and the sale hence was commercially unreasonable. (See *General Elec. Credit v. Durante Bros., etc.* (1980) 79 A.D.2d 509 [433 N.Y.S.2d 574, 576] ["the newspaper selected for advertising was clearly not the most appropriate one for reaching the intended market."].) But as stated, in another case involving different collateral the trier of fact may find that giving the required legal notice alerted the relevant market to the sale and thereby satisfied the requirement of adequate promotion.

Our decision does not end these proceedings, however. As mentioned *ante*, page 1226, the Court of Appeal's judgment made it unnecessary for that court to address a number of defendant's claims of error. The Court of         Appeal's judgment is reversed and the cause is remanded to consider defendant's other claims.

Lucas, C.J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

The petition of appellant ITT Commercial Finance Corp. for a rehearing was denied February 23, 1995.

[1] In its entirety, section 9504, subdivision (3), currently provides:

"A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, *provided the secured party acts in good faith and in a commercially reasonable manner.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, if he or she has not signed after default a statement renouncing or modifying his or her right to notification of sale, and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice giving his or her address (before that secured party sends his or her notification to the debtor or before debtor's renunciation of his or her rights), a notice in writing of the time and place of

any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor at his or her address as set forth in the financing statement or as set forth in the security agreement or at such other address as may have been furnished to the secured party in writing for this purpose, or, if no address has been so set forth or furnished, at his or her last known address, and to any other secured party at the address set forth in his or her request for notice, at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held or in case no newspaper of general circulation is published in the county in which the sale is to be held, in a newspaper of general circulation published in the county in this state that (1) is contiguous to the county in which the sale is to be held and (2) has, by comparison with all similarly contiguous counties, the highest population based upon total county population as determined by the most recent federal decennial census published by the Bureau of the Census. Any public sale shall be held in the county or place specified in the security agreement, or if no county or place is specified in the security agreement, in the county in which the collateral or any part thereof is located or in the county in which the debtor has his or her residence or chief place of business, or in the county in which the secured party has his or her residence or a place of business if the debtor does not have a residence or chief place of business within this state. If the collateral is located outside of this state or has been removed from this state, a public sale may be held in the locality in which the collateral is located. Any public sale may be postponed from time to time by public announcement at the time and place last scheduled for the sale. The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. Any sale of which notice is delivered or mailed and published as herein provided and which is held as herein provided is a public sale." (Italics added.)

[2] In its entirety, section 9507, subdivision (2), currently provides: "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or *if he has otherwise sold in conformity with reasonable commercial practices* among dealers in the type of property sold he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable." (Italics added.)

Save trees - read court opinions online on Google Scholar.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT B

27

21

28

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

## Deposition of Tameka Renee Crosland

Before me this day personally appeared, Tameka Renee Crosland who being duly sworn, deposes and says:

1. On January 19, 2024, your affiant, party in interest went to Santa Monica Court in regards to an unlawful detainer filing on my deceased father James Terry Crosland.

2. That your affiant spoke to Ruben Juarez, court service supervisor. I informed him that an unlawful detainer was filed on my deceased father. I submitted an answer to said complaint in the form of a request and attached a copy of the death certificate and paperwork informing him and the court that there is currently an open probate case.

3. Mr. Juarez informed me that there was a two hundred dollar filing fee. Mr. Juarez stated that the computer wasn't allowing him to charge the amount of two hundred dollars, it only allowed him to charge a fee of twenty dollars. Your affiant was charged twenty dollars to her card, the answer was submitted to the court.

4. Your affiant, physically went each week to the Santa Monica court to check the registry of actions. The last action entered was the January 19, 2024 answer.

5. There's been no response to the answer filed in the registry of actions for approximately one month and sixteen days.

6. On Friday March 4, 2024 your affiant checked the registry of action at the Santa Monica court and learned that a request for entry of default was entered. I spoke to clerk supervisor Ruben Juarez regarding said default. He stated that I was not a party to the action. I responded if that was the case why did you take my money and record the document in the registry of actions.

7. I requested to speak to his supervisor.  Sybil Hall, manager came out and stated to me in a belligerent manner "the unlawful detainer was filed while your father was alive". I stated that was impossible, my father has been deceased since 2019.

8. Around twenty minutes later my attorney process server Ron Wilkinson explained to Mr. Juarez that the estate of James Crosland is in probate and why was the attorney of record not sent the summons and complaint. Mr. Juarez had no explanation.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

CLAIM

Tameka Renee Crosland, party in interest has been damaged by employee Ruben Juarez, supervisor and Sybil Hall, manager of the Superior Court of California Santa Monica, due to dereliction of duty, and betrayal of the public trust.

Further Affiant Sayeth Nought

Tameka Renee Crosland

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles
Subscribed and sworn to (or affirmed) before me on this 9th
day of March, 2024, by Tameka Renee
Crosland,
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(Seal) 

Signature

2

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

## Deposition of Tameka Renee Crosland

Before me this day personally appeared, Tameka Renee Crosland who being duly sworn, deposes and says:

1. On April 11, 2024, your affiant, took two court documents to the Superior Court, Santa Monica, titled (CLAIM OF RIGHT TO POSSESSION AND NOTICE OF HEARING, LASC form CP10 and NOTICE OF RELATED CASE, LASC form CM-015).

2. Superior court clerk, Ashley Williams accepted both documents. Your affiant tendered payment to the Santa Monica courthouse in the amount of $225 to become a party of interest in the unlawful detainer complaint filed against a decedent. Ashley Williams stated that she could not accept form CM-015 (NOTICE OF RELATED CASE).

3. Your affiant was told by court manager Sybil Hall that "you cannot file the NOTICE OF RELATED CASE with this court".

4. Your affiant, requested Ashely Williams to "file on demand" the (NOTICE OF RELATED CASE). Ashely Williams refused the request.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

### CLAIM

Tameka Renee Crosland, party in interest has been damaged by employees, Ashely Williams and Sybil Hall, of the Superior Court of California Santa Monica, due to misconduct. Failure to maintain the integrity of the profession; engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; engaging in conduct that is prejudicial to the administration of justice.

Further Affiant Sayeth Nought

Tameka Renee Crosland

1

A notary public or other officer completing this certificate verifies only the identity of the individual
who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or
validity of that document.

State of California

County of __Los Angeles__

Subscribed and sworn to (or affirmed) before me on this ___12th___
day of __April_____, 20 24, by __Tameka Renee Crosland_____

_____

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(Seal)                                                    Signature_____



MC-030

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

Viontre Hausey
4238 3rd Ave
Los Angeles, CA 90008

*FOR COURT USE ONLY*

TELEPHONE NO.: 213/248-0595    FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Self Represented

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica 90401
BRANCH NAME: SANTA MONICA COURTHOUSE

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 23 2024

David W. Slayton, Executive Officer/Clerk of Court

PLAINTIFF/PETITIONER: GOLDEN COMBO HOLDING
DEFENDANT/RESPONDENT: JAMES CROSLAND

| DECLARATION | CASE NUMBER: 24SMUD00114 |
|---|---|

State of California

Los Angeles County

The undersigned declares the following:

On July 16, 2024 around 11:00 a.m., Tatiana Does and Teresa Turner for Sheriff services did engage in conduct involving dishonesty, fraud, and deceit.

1. Declarant, tried to file an Arrieta Claim with Sheriff services, in Inglewood, California, in which I was meet with much prejudice by Tatiana Does and Teresa Turner.
2. Declarant, issued Tatiana Does my identification and the form CP10 - claim of right to possession and notice of hearing. Tatiana Does brought the file up and began a conversation with Teresa Turner.
3. 30 minutes went by and declarant, observed Tatiana Does, with the file in her hand.
4. After waiting over an hour, Teresa Turner stated that "they cannot find the file".
5. Declarant, observed Tatiana Does taking the file with her to lunch.
6. It wasn't until Ron Wilkinson intervene; that the file reappeared.
7. Declarant, did not get his form approved until 2:55 p.m.
8. Declarant, rights were abused by Tatiana Does and Teresa Turner.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: July 23, 2024

Viontre Hausey
_____
*(TYPE OR PRINT NAME)*

_____
*(SIGNATURE OF DECLARANT)*

☐ Attorney for ☐ Plaintiff ☐ Petitioner ☑ Defendant
☐ Respondent ☐ Other *(Specify)*:

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

MC-030

Tameka Renee Crosland
4238 3rd Ave
Los Angeles, CA 90008

FOR COURT USE ONLY

TELEPHONE NO.: 213/660-5993    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Self Represented

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 23 2024

David W. Slayton, Executive Officer/Clerk of Court

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica 90401
BRANCH NAME: SANTA MONICA COURTHOUSE

PLAINTIFF/PETITIONER: GOLDEN COMBO HOLDING

DEFENDANT/RESPONDENT: JAMES CROSLAND

| DECLARATION | CASE NUMBER: 24SMUD00114 |
|---|---|

State of California

Los Angeles County

The undersigned declares the following:

On July 16, 2024, around 11:00 a.m., declarant, took her son, Viontre Hausey to Sheriff services located at 1 E Regent St Ste 205, Inglewood, CA to file an Arrieta claim.

1. Declarant, son tried to file an Arrieta Claim with Sheriff services, which was meet with much prejudice by public servants: Tatiana Does and Teresa Turner.
2. Declarant, son issued Tatiana Does his identification and the form CP10 - claim of right to possession and notice of hearing. Tatiana Does brought the file up and began a conversation with Teresa Turner.
3. 30 minutes went by and I observed Tatiana Does, with the file in her hand.
4. After waiting over an hour, Teresa Turner stated that "they cannot find the file".
5. Declarant, observed Tatiana Does taking the file with her to lunch.
6. It wasn't until Ron Wilkinson intervene; that the file reappeared.
7. Declarant, son did not get his form approved until 2:55 p.m.
8. Declarant, son rights were abused by the deceit displayed by Tatiana Does and Teresa Turner.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: July 23, 2024

Tameka Renee Crosland
(TYPE OR PRINT NAME)

(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☑ Defendant
☐ Respondent  ☐ Other (Specify):

Form Approved for Optional Use
Judicial Council of California
MC-030 [Rev. January 1, 2006]

DECLARATION

Page 1 of 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT C

26
27
28

22

CM-015

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Tameka Renee Crosland<br>4238 3rd Avenue<br>Los Angeles, California 90008<br><br>TELEPHONE NO.: 213/600-5993     FAX NO. *(Optional):*<br>EMAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Self-Represented | **FOR COURT USE ONLY**<br><br>*per man<br>Do not<br>File. Not<br>a party/<br>Return to claimant* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica 90401
BRANCH NAME: SANTA MONICA

| | |
|---|---|
| , PLAINTIFF/PETITIONER: TAMEKA RENEE CROSLAND | **CASE NUMBER:**<br>24SMUD00114 |
| DEFENDANT/RESPONDENT: GOLDEN COMBO HOLDING AND MANAGEMENT, LLC | **JUDICIAL OFFICER:**<br>George F. Bird Jr. |
| **NOTICE OF RELATED CASE** | **DEPT:**.<br>S |

*Identify, in chronological order according to date of filing, all cases related to the case refere*  *WAIT for Ruling 4-18-24 #9*

1.  a.  Title: ESTATE OF JAMES TERRY CROSLAND, III, aka JAMES T. CROSLAND, III ,

    b.  Case number: 23STPB01325

    c.  Court: [ ] same as above
        [✱] other state or federal court *(name and address):* STANLEY MOSK 111      )0012

    d.  Department: 79

    e.  Case type: [ ] limited civil  [ ] unlimited civil  [✱] probate  [ ] family law  *(specify):*

    f.  Filing date: February 7, 2023

    g.  Has this case been designated or determined as "complex?"  [ ] Yes  [✱] No

    h.  Relationship of this case to the case referenced above *(check all that apply):*

        [✱] involves the same parties and is based on the same or similar claims.

        [✱] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        [✱] involves claims against, title to, possession of, or damages to the same property.

        [ ] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            [ ] Additional explanation is attached in attachment 1h

    i.  Status of case:
        [✱] pending
        [ ] dismissed  [ ] with  [ ] without prejudice
        [ ] disposed of by judgment

2.  a.  Title: GOLDEN COMBO HOLDING  v.  JAMES CROSLAND

    b.  Case number: 24SMUD00114

    c.  Court: [✱] same as above
            [ ] other state or federal court *(name and address):*

    d.  Department: S

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
*www.courts.ca.gov*

CM-015

| PLAINTIFF/PETITIONER: TAMEKA RENEE CROSLAND | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: GOLDEN COMBO HOLDING AND MANAGEMENT, LLC | 24SMUD00114 |

2. *(continued)*

e. Case type: [x] limited civil  [ ] unlimited civil  [ ] probate  [ ] family law  [ ] other *(specify):*

f. Filing date: January 16, 2024

g. Has this case been designated or determined as "complex?" [ ] Yes  [x] No

h. Relationship of this case to the case referenced above *(check all that apply):*

   [x] involves the same parties and is based on the same or similar claims.

   [x] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   [x] involves claims against, title to, possession of, or damages to the same property.

   [ ] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

   [x] Additional explanation is attached in attachment 2h

i. Status of case:

   [x] pending

   [ ] dismissed  [ ] with  [ ] without prejudice

   [ ] disposed of by judgment

3. a. Title: TAMEKA RENEE CROSLAND V BARON SILVERSTEIN

   b. Case number: 24STCV07909

   c. Court: [ ] same as above

      [x] other state or federal court *(name and address):* STANLEY MOSK 111 North Hill Street Los Angeles, CA 90012

   d. Department: 38

   e. Case type: [ ] limited civil  [x] unlimited civil  [ ] probate  [ ] family law  [ ] other *(specify):*

   f. Filing date: March 28, 2024

   g. Has this case been designated or determined as "complex?" [ ] Yes  [x] No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      [x] involves the same parties and is based on the same or similar claims.

      [x] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      [x] involves claims against, title to, possession of, or damages to the same property.

      [ ] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

      [ ] Additional explanation is attached in attachment 3h

   i. Status of case:

      [x] pending

      [ ] dismissed  [ ] with  [ ] without prejudice

      [ ] disposed of by judgment

4. [ ] Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: April 11, 2024

Tameka Renee Crosland                                          ▶ _____
_____                                    (SIGNATURE OF PARTY OR ATTORNEY)
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]                    **NOTICE OF RELATED CASE**                    Page 2 of 3

CM-015

| PLAINTIFF/PETITIONER: TAMEKA RENEE CROSLAND | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: GOLDEN COMBO HOLDING AND MANAGEMENT, LLC | 24SMUD00114 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

   Ron Wilkinson
   3187 Red Hill Ave #115 Costa Mesa, CA 92626

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. [x] deposited the sealed envelope with the United States Postal Service.
   b. [ ] placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):* April 11, 2024
   b. from *(city and state):* Los Angeles, CA

4. The envelope was addressed and mailed as follows:

   a. Name of person served:
   BARON SILVERSTEIN
   Street address: 330 N. BRAND BLVD #700
   City: GLENDALE
   State and zip code: CA 91203

   b. Name of person served:
   JEFFREY STENMAN
   Street address: 2763 CAMINO DEL RIO S STE 200
   City: SAN DIEGO
   State and zip code: CA 92108

   c. Name of person served:
   CALIBER HOME LOANS, INC
   Street address: 330 N. BRAND BLVD #700
   City: GLENDALE
   State and zip code: CA 91203

   d. Name of person served:
   QUALITY LOAN SERVICE COMPANY
   Street address: 2763 CAMINO DEL RIO S STE 200
   City: SAN DIEGO
   State and zip code: CA 92108

[x] Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: April 11, 2024

Ron Wilkinson
(TYPE OR PRINT NAME OF DECLARANT)

▶ *(SIGNATURE OF DECLARANT)*

For your protection and privacy, please press the Clear This Form button after you have printed the form.   [ Print this form ]   [ Save this form ]   [ Clear this form ]